## Chicago City Railway v. Lizzie Sullivan.

1. NEGLIGENCE—*Getting upon Moving Cars.* —A person who attempts to get upon a moving car and is injured, is not in the exercise of ordinary care under the facts shown in this case.

2. INSTRUCTIONS—*Must be Asked in Apt Time.*—It is not error to refuse an instruction which is not asked in proper time.

**Trespass on the Case,** for personal injuries. Trial in the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Verdict for plaintiff for $8,600. Remittitur for $4,600. Judgment for $4,000. Appeal by defendant. Heard in this court at the March term, 1898. Reversed and remanded. Opinion filed June 13, 1898.

W. J. HYNES and W. J. FERRY, attorneys for appellant.

A. B. ST. JOHN and S. A. FRENCH, attorneys for appellee.

MR. JUSTICE WINDES delivered the opinion of the court.

March 3, 1894, appellee, who was then a dressmaker, was injured while attempting to board one of appellant's cable cars (the rear one of a train consisting of a grip and two trailers), going south on State street, in Chicago, and after the train had passed Monroe street. She charged in the

first count of her declaration that appellant was negligent in not regarding its duty to run its cars in a careful manner, and to stop for a reasonable length of time at the intersection of State and Monroe streets, where it was appellant's custom to stop its cars to enable her to get on, but when she, with due care and diligence, was on the step of appellant's car and endeavoring to enter the same as a passenger, appellant carelessly and negligently caused said car to suddenly and violently start and move, whereby, etc. In the second count she charged that appellant was negligent in respect to the same duty, and while she, with due care and diligence, was attempting to get on the car as a passenger, and was upon the step of the car, appellant carelessly and negligently jerked and violently started and moved said car, whereby, etc. In an additional count she charged that appellant was negligent in respect to the same duty; that appellant reduced the speed of its train and slowed the same down while crossing Monroe street at the south side of Monroe street on State street; that the train came almost to a complete stop and scarcely moved; that she, with due care and diligence on her part, stepped upon the step of one of the cars, and was in the act of entering said car to be carried, etc., when the defendant, by its agents and servants in charge of said train, carelessly and negligently caused said train to be suddenly and violently started and jerked, whereby, etc. Appellant pleaded the general issue to all the counts, and a trial before the court and a jury resulted in a verdict for appellee of $8,600. Appellant's motion for a new trial, after a remittitur of $4,600 by appellee, was overruled and judgment entered for $4,000, from which this appeal was taken.

It is claimed the trial court should have directed a verdict for appellant; that the verdict is against the evidence; that the court admitted improper testimony; that appellee's attorneys made improper statements to the jury; and that the verdict is excessive.

After all the evidence was closed and the arguments of counsel had been made to the jury, appellant, along with

Chicago City Railway v. Sullivan.

numerous instructions asked by the appellee, asked twenty-two instructions upon the merits of the questions submitted to the jury, and also one directing a verdict for defendant. The latter instruction was refused, in which there was no error. It came too late, and any right to have this instruction given was waived by previously arguing the case to the jury and submitting other instructions upon the facts with this one. Ry. Co. v. Fishman, 169 Ill. 197; Wright v. Avery, 172 Ill. 313.

Appellee's counsel in argument concede that when she attempted to board the car the train was moving, and therefore there could be no recovery under the first and second counts of the declaration, in which the negligence alleged was that appellant carelessly and negligently caused the car to suddenly and violently start and move. If this concession were not made, the verdict could not be sustained on the first and second counts, by the proof, which is overwhelming, that appellee attempted to board the car when it was moving. As to the additional count, we think its allegations are not established by a preponderance of the evidence. It alleges that the speed of the train was reduced—slowed down while crossing Monroe street; that the train came almost to a complete stop and scarcely moved, whereas the great preponderance of the evidence is that the train stopped with the rear of the last car at about the south side of Monroe street, and before appellee attempted to get on it, the train had started up and was moving at one-half its ordinary speed. Appellee swears that the car was slowing up all the time; that it did not stand—did not stop perfectly still; that it was moving at the time she tried to get on; that she thought it had stopped enough so she could get on; that she took hold of the railing at the rear end of the car—the rail of the dash on the rear end of the car—and did not know why she did not wait until it stopped altogether. She admits that she ran to get on the car, as to which several witnesses, both for appellee and appellant, agree with her.

Her witness, F. B. Miner, who was on the sidewalk on

the west side of State street going north toward Monroe
street, says his attention was called to her by an exclama-
tion of Mr. Moody at his side, saying "My God!" that
when he looked she had hold of the rail of the car, and was
partly swinging back, and that the next thing he knew they
(appellee and Moody) were on the ground rolling over—both
of them; that it was all done very quick, in a very few
seconds, and that the car was moving, but as to the speed
he could not answer. It is clear from his testimony that
the speed of the train was sufficient to make it negligent,
to say the least, for appellee to have attempted to board the
car, moving as it was.

Anna Lyons, who was appellee's companion and one of
her witnesses, aged seventeen years at the time of trial,
swears that appellee saw the car coming from the north;
it was north of Monroe street; that appellee then left wit-
ness; that appellee held an umbrella and muff in her right
hand and "motioned the car to stop and the car stopped—
that is, it slackened up;" that appellee got one foot on the
lower step and one foot on the top step, and she held on to
the railing around the back of the car with her left hand;
that the car was moving very slow when she stepped on the
platform, and as she got on the conductor rang the bell to
go ahead; that the car jerked and she swung back—swung
around backward; that as she fell she went over the dash-
board, doubled right over like a ball, and was dragged
about the length of two cars, and that the man who ran to
her assistance and grabbed hold of her fell first, and he was
picked up. On cross-examination she said the car was mov-
ing when she first saw it; was moving as she came over
Monroe street and up to the time appellee tried to get on,
at the time she got on, and for a considerable distance
after she got on.

Mr. Moody, who was with Mr. Miner and ran to the
assistance of appellee, testified that the train halted and
appellee stepped on with her left foot, and as she raised
herself up the car started; that she took hold of the railing
with her left arm; that she wheeled around and shrieked;

that he rushed up and grabbed her by the dress, and she came over, and "as she came the fender struck her and that broke my hold and threw me head over heels in the mud." On cross-examination he admitted that the train had not stopped still: that it kept going at a greater or less speed all the time from the time he first noticed it until appellee fell. On re-direct examination he testified that he thought she was doing a foolish thing, because at the time she started for the train he did not think the train was going to stop. On re-cross examination he said : "I looked at her because I knew the train would kill her if it did not stop; that is what aroused me; it was going at full speed at that time; I can't say full speed, but as fast as they run—the usual speed." The time then referred to was immediately after appellee had put her foot on the step of the car.

We think that when the statements of these witnesses, that appellee took hold of the rear railing with her left hand and swung around, was rolled over like a ball, that Moody, who went to her assistance, was also thrown down, and that it all happened so quickly, and that Moody made the exclamation he did, are considered in connection with the evidence in behalf of the defense, it is apparent that the train was moving quite rapidly when appellee attempted to get on, and had not slowed down, and was not going very slow, as she claimed.

On behalf of appellant, seven witnesses, six of whom appear to be wholly disinterested, testify that the train had come to a stop about the south side of Monroe street, and at the time appellee attempted to board it, it had started up and had attained at least one-half the usual speed. These witnesses appear to have had good opportunities of observation as to the circumstances of the accident, and when their evidence is considered in connection with that of appellee and her witnesses, we think the clear weight of the evidence is, that instead of the speed of the train being reduced, slowed down, instead of its having come almost to a complete stop and scarcely moving at the time appellee attempted to board it, as alleged by her, the train was mov-

ing quite rapidly, and therefore the preponderance of proof does not sustain the verdict of the jury. This conclusion makes it unnecessary to consider the other points argued, and inasmuch as upon another trial any error in these respects may be avoided, we do not discuss them.

The judgment will be reversed and the cause remanded.